## John R. Jones, Cornelia P. Jones, Administratrix, *v.* James E. Cleveland, Appellant.

*Contract—Rescission of—Question for jury.*

In an action to recover for goods sold and delivered an alleged rescission of the contract becomes the vital point in the case, and there being some evidence of rescission it was reversible error to affirm plaintiff's point as follows : "There is no proof that the contract of sale ever was rescinded and abrogated by the consent of the parties."

Argued Jan. 10, 1898.  Appeal, No. 11, Jan. T., 1898, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1894, No. 285, on verdict for plaintiff.  Before RICE, P. J., WICK-HAM, BEAVER, ORLADY, SMITH and PORTER, JJ.  Reversed.

Assumpsit for goods sold and delivered.  Before WOOD-WARD, P. J.

It appears from the evidence that there was a sale and delivery on behalf of Jones to the defendant Cleveland of fifty tubs of butter, through a sales agent by the name of Staples. The butter was delivered to the defendant and some of it was sold by him.

There was evidence tending to show that subsequent to the sale and delivery Staples, the agent, visited defendant's store in Wilkes-Barre where they had a conversation in which it was alleged that the butter was not good, whereupon Staples telephoned Jones at Binghamton and received from him an answer

to the effect that he was to dispose of the butter to the best advantage he could, and that finally, after making efforts to sell to others, he did sell the whole of this butter to Cleveland at 12 cents a pound, receiving from Cleveland two checks in payment, and gave him a receipt in full.

Out of the proceeds of one of these checks he took his expenses and commission and sent the balance to one Beemer, who he says bought the butter at 11 cents a pound, he having sold it on his account to Cleveland. The court left the question to the jury to decide whether Cleveland was either actually or by force of law, a party to this fraud, stating that there was a fraud beyond doubt. It instructed the jury at the same time that the law applicable to the facts is stated in Bradlee & Co. v. Kemmerer, 108 Pa. 368.

Verdict and judgment for plaintiff for $466.39. Defendant appealed.

*Errors assigned* among others were (1, 2) In rejecting testimony relating to a second bill of goods between the parties; the offer being made for the purpose of showing that at the time the butter in controversy was bought from Staples and settlement made with Staples, the defendant was not acquainted with and had no knowledge of the plaintiff in the transaction, and that he bought the butter from Staples, believing that Staples was the bona fide owner of said butter. (5) The defendant takes exception to the following statement in the charge of the court, to wit: " Mr. Staples was a sales broker, who traveled the country and effected sales for Mr. Jones. He had no interest in the ownership or property, but was merely a commission broker or intermediate man, who sold the property of another, receiving for his service a commission on the sales. His habit was to receive orders and to forward them to Jones, his employer, at Binghamton, who proceeded to fill them." (6) The charge of the court was vicious and misleading to the jury, as follows : " Up to this point we have the evidence of the sale and delivery of this butter by Jones to Cleveland, and, though there were nothing else in the case, the plaintiff would be entitled to recover the full amount claimed in this suit for the purchase money of the butter." (7) In affirming the plaintiff's first point, which was as follows: " 1. If the jury believe that

Staples, who sent the order to plaintiff, pursuant to the proposition contained in the order from Staples, packed up and sent the goods by the D. & H. R. R. to the defendant at Wilkes-Barre, and the goods were there delivered to the defendant, the contract of the sale was thereby consummated and defendant became the debtor of J. R. Jones for the specified price of said goods." (8) The court erred in affirming the plaintiff's second point, which read as follows : " 2. If the jury believe from the evidence that the plaintiff was a merchandise broker, the defendant had no right to make payment of the butter to him, unless he was authorized by Jones to make such payment, and the burden of proof is cast upon the defendant to establish by satisfactory proof that Jones authorized the defendant to make such payment." (9) In affirming plaintiff's third point, which reads as follows : " 3. That there is no proof that the butter after it was accepted and received by the defendant and appropriated by him was ever delivered in fact to said Jones, or the contract of sale between Jones and Cleveland ever was rescinded and abrogated by the consent of said Jones and Cleveland, nor was there any proof that said butter was ever delivered to said Beemer by Jones or his authority." (10) In affirming the plaintiff's fourth point, which was as follows : " 4. That Staples' position and functions as broker with reference to this butter had wholly terminated and ceased when the butter reached the hands of Cleveland, and he no longer represented the said Jones." (11) In affirming the plaintiff's fifth point, which reads as follows : " 5. That the defendant cannot avail himself of his ignorance that the plaintiff, Jones, was his vendor, unless he shows that he had used due diligence to ascertain the fact previous to his paying Staples the moneys he paid him for the butter." (12) The court erred in qualifying the defendant's first point, which reads as follows : " 1. If the jury believe that Cleveland honestly thought he was dealing with Staples, or with Staples and Beemer, and paid for the butter as he testified, then the verdict should be for the defendant. *Answer:* We may qualify that point and affirm it by saying : ' Provided he was not negligent in acting on the knowledge which he had in the premises.' With that qualification we affirm the point." (13) In qualifying the defendant's second point, which reads as follows : " 2. If the jury believe that

Cleveland at first refused the butter, and that then the plaintiff, or his manager, instructed Staples to sell it for what he could get, and in pursuance thereof, he sold it to Beemer, then the verdict must be for the defendant. *Answer :* We say that may be affirmed if the jury believe that the transaction was, as we said before, untainted and free from fraud; with that qualification the point may be affirmed." (14) In charging the jury as follows : " Whatever else is true in this case, it is plain that in this transaction Staples and Beemer did not act as honest men should have acted; that they were guilty of a dishonest unbusinesslike trick in their manner of conducting this business, which resulted in cheating Jones out of every dollar of his money for this butter. In other words, the owner of the property employed a man as his agent on commission, who disposed of the property, received his commission, put it in his pocket and then sold the property a second time to Beemer, received commission again from Beemer, and now goes on the stand to testify for the defendant." (15) The defendant excepts to the whole of the charge of the court, in that it is not sufficiently explanatory of the law governing the case, and in the general assumption that Cleveland was connected with a fraudulent undertaking to cheat the plaintiff.

*Jno. F. Scragg*, with him *E. C. Newcomb, E. F. McGovern* and *Jas. L. Lenahan*, for appellant.

*A. J. Colborn, Jr.*, with him *D. J. M. Loup*, for appellee.— The charge was warranted under the evidence, and the strong expressions used by the court were right and proper, the whole controversy was rightfully left for the determination of the jury : Knapp v. Griffin, 140 Pa. 604.

Strong expressions of opinion upon the facts, which, if taken in connection with the whole charge, does not amount to a binding instruction, is not ground for reversal : Rogers v. Davidson, 142 Pa. 436 ; Didier v. Penna. Co., 146 Pa. 582.

OPINION BY BEAVER, J., February 19, 1898 :

This case was, in the main, well tried and fairly submitted to the jury. The evidence in regard to the receipt of the bill for a second shipment of butter was properly rejected. The testi-

mony was irrelevant and threw no light whatever upon the receipt or failure to receive the bill for the first shipment. If received, it would not have established or tended to establish the fact which was alleged to be the purpose of its introduction. The first and second assignments of error are, therefore, overruled.

As to the admission of the testimony of W. H. Jones in rebuttal, it was entirely within the discretion of the court, and was properly admitted. The denial of the conversations detailed by the defendant's witnesses on cross-examination in chief was of such conversations as were in the mind of the counsel who conducted the examination. The testimony in rebuttal was a denial of the conversations as they were detailed by the defendant's witnesses. The defendant suffered in no way by the admission of this denial.

The statements of fact, as contained in the parts of the charge complained of in the fifth and sixth assignments of error are abundantly sustained by the evidence, and were a fair and clear epitome of the evidence in regard to the status of Staples and the transaction conducted by him, as the agent of Jones, with Cleveland.

The answers of the court to the points of the plaintiff and defendant, as complained of in the seventh, eighth, tenth, eleventh, twelfth and thirteenth assignments of error were correct. Cleveland's acquaintance with Staples and former knowledge of his business, the positive testimony of one of the plaintiff's witnesses as to the mailing of the bill or invoice of the first consignment of butter, made yet more emphatic by his cross-examination upon the subject, were all facts which were to be considered by the jury, and properly influenced the court in qualifying the points which relate to the knowledge and good faith of Cleveland. The manner in which the court characterized the transaction between Staples and Beemer did the defendant no harm, and was certainly no stronger than the facts warranted. One of the most significant facts in the case, which tended to show collusion between Staples and Beemer, namely, the sending of the money received from Cleveland by the former to the latter, instead of to Jones the owner, was not mentioned by the court.

There was no general assumption by the court that Cleveland

had knowledge of or was connected with any fraudulent undertaking to cheat the plaintiff, and nothing in the general charge or in the answers to points justifies the inference of such assumption. The fourteenth and fifteenth assignments of error are, therefore, also overruled.

The ninth assignment is as follows : " That there is no proof that the butter, after it was accepted and received by the defendant and appropriated by him, was ever delivered in fact to said Jones or the contract of sale between Jones and Cleveland ever was rescinded and abrogated by the consent of said Jones and Cleveland, nor was there any proof that said butter was ever delivered to said Beemer by Jones or his authority." It is true that there was no proof that any of the first shipment of butter was ever actually redelivered to Jones, nor was there any proof that any of the butter was ever delivered to Beemer by Jones or by his authority. The rescission of the contract between Jones and Cleveland was a vital point in the case. There was some evidence of such a rescission. It is found in the testimony of Staples, Jones's agent, who testified that he had called Jones by telephone from Cleveland's office in Wilkes-Barre, had informed him that Cleveland would not accept the butter and was told by him to dispose of it to the best advantage; in accordance with which instructions he resold the butter as stated by him in other parts of his testimony. If the jury had believed this testimony, they would have been warranted in finding that the contract had been rescinded. There was error, therefore, in affirming that portion of the plaintiff's third point which stated that " There is no proof that the contract of sale between Jones and Cleveland ever was rescinded and abrogated by the consent of said Jones and Cleveland." For this reason, the ninth assignment of error must be sustained.

The judgment is reversed and a new venire awarded.